UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHARLES DEMARIO JOHNSON, et al.,

        Plaintiffs,

                                    Case No. 2:22-cv-22

v.

                                    Hon. Hala Y. Jarbou

HEIDI E. WASHINGTON, et al.,

        Defendants.
_____/

## ORDER FOR SEVERANCE

This is a civil rights action brought under 42 U.S.C. § 1983 by six state prisoners housed at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. In a previous order, the Court dismissed Plaintiff Charles Demario Johnson for failure to pay $67.00, his proportionate share of the filing fee. Accordingly, Plaintiffs Teywon Beckham, Marcus Howell, Dimitrus A. Clark, Dannel Christopher Hammond, and Edward James Cromer remain. Rule 21 of the Federal Rules of Civil Procedure provides that, on motion by a party or on its own motion, the Court may, at any time, drop or add parties or sever a claim on grounds of misjoinder. *See* Fed. R. Civ. P. 21. Applying that standard, the Court will sever the claims of each remaining Plaintiff into a new related action.

## Discussion

### I.     Factual Allegations

As noted above, Plaintiffs Johnson, Beckham, Howell, Clark, Hammond, and Cromer are incarcerated with the Michigan Department of Corrections (MDOC) at MBP. The events about which they complain occurred at that facility. Plaintiffs sue MDOC Director Heidi E. Washington and the following MBP personnel: Warden Erica Huss, Assistant Deputy Warden Unknown Pelky,

Prisoner's Counselor Unknown Thornington, Unit Manager Peggy Erickson, Hearing Officer Thomas Mohrman, Lieutenant Unknown Minthorn, Officers Unknown Snively, Unknown Kessler, Unknown Pucel, Unknown Travis, Unknown Morgan, and Unknown Stacy, and Psychologist Mark W. Hares.

In their amended complaint, Plaintiffs aver that they are mentally disabled and currently incarcerated in MBP's START Unit. (ECF No. 9, PageID.27.) The START Unit is an alternative to administrative segregation:

> The Department is in the process of piloting general population Start Units as an alternative placement for eligible prisoners who would otherwise be classified to Administrative Segregation. These units provide a structured environment where prisoners move through progressive levels as the prisoner demonstrates positive behavior and program participation with the goal of reintegrating them back into a traditional general population setting. . . .
>
> The targeted prisoner population groups for placement in a Start Unit are:
>
>> Prisoners who have been diagnosed with serious mental illness, as defined by Mental Health Services policy, procedure and protocol, whose disruptive behavior would warrant reclassification to administrative segregation.
>>
>> Prisoners who refuse to return to a traditional general population setting that has resulted in extended administrative segregation placement.
>>
>> Prisoners who have a history of repeated disruptive behavior, who would otherwise be classified to administrative segregation for new negative behavior.
>>
>> Other prisoners who would benefit from placement in the Start Unit based on their disruptive behavior, as approved by the CFA Deputy Director or designee. This may include prisoners who are within one year of their discharge date or who have received positive parole action.
>
> Each prisoner accepted for placement in a Start Unit will be provided intake processing, during which time the prisoner's behavioral history and program needs will be reviewed to develop the prisoner's individualized Start Plan. The Start Plan shall clearly define behavioral benchmarks for increased privileges and programs for the prisoner while housed in a Start Unit.

> After intake processing, there are four stages through which prisoners may progress while in a Start Unit. Stage 0 is the most restrictive and Stage 3 is the least restrictive. A prisoner's progression within a Start Unit will be based on the individual prisoner's behavior at each stage and subject to recommendations made by the housing unit team and Security Classification Committee (SCC).

MDOC Director's Office Memorandum (DOM) 2021-17 (eff. Jan. 1, 2021).

Throughout the amended complaint, Plaintiffs aver that the START Unit at MBP is essentially a "secret prison." (ECF No. 9, PageID.28.) They contend that Defendants are "sadistically interfering with the procurements and side-effects of [their] medications and mental health treatment." (*Id.*) Plaintiff states that the START Unit has no "timeline for ending[,] which prolong[s] [their] stay." (*Id.*, PageID.29.) They contend that most START Unit prisoners are "trapped" for 18 months to 3 years and are "being heavily medicated." (*Id.*) Plaintiffs suggest that DOM 2021-17 should be found unconstitutional. (*Id.*, PageID.30.)

The bulk of the amended complaint consists of allegations concerning incidents that involve only Plaintiff Johnson. As noted above, however, Plaintiff Johnson has been dismissed from this action for lack of prosecution and failure to comply with the Court's order. Plaintiffs Beckham, Howell, Clark, Hammond, and Cromer have each attached an affidavit to the amended complaint. (ECF No. 9-1.) In those affidavits, each Plaintiff sets forth their concerns regarding the START Unit at MBP. (*Id.*)

Based on their allegations, Plaintiffs assert claims for First, Eighth, and Fourteenth Amendment violations, as well as violations of their rights under the Americans with Disabilities Act (ADA). (ECF No. 9, PageID.47–49.) Plaintiffs request injunctive relief in the form of "proper placement and programming to improve mental health and treatment," as well as a temporary restraining order to end the START Unit. (*Id.*, PageID.49.) They also seek declaratory and injunctive relief in the form of "a[n] ending or stoppage to the START Unit/program," as well as compensatory and punitive damages. (*Id.*)

**II.     Severance**

All Plaintiffs presently reside at MBP. Federal Rule of Civil Procedure 20(a)(1) identifies the circumstances where Plaintiffs may join together and raise their claims in one action:

> (A) [if] they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) [if] any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). As noted *supra*, Plaintiffs all contend that the START Unit at MBP violates their constitutional rights, as well as their rights under the ADA. It appears, therefore, that the joinder of Plaintiffs' claims here would be permitted under the rules.

However, although Plaintiffs' claims may be permissibly joined under Rule 20, there are ample reasons to sever the claims of multiple prisoner-plaintiffs who are proceeding *in pro per*. In *Proctor v. Applegate*, 661 F. Supp. 2d 743 (E.D. Mich. 2009), the United States District Court for the Eastern District of Michigan set out those reasons:

> In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966), the Supreme Court held that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." Consistent with this policy, the requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). The undersigned suggests, however, that plaintiffs, especially prisoners, do not have free reign to join multiple claims and defendants in any manner they choose. As the New Jersey District Court recently observed, "the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit." *Boretsky v. Corzine*, 2008 WL 2512916, *4 (D.N.J. 2008), citing, *Pruden v. SCI Camp Hill*, 252 F. App'x 436 (3d Cir. 2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007); *Coughlin, supra*. And, Rule 20 does not authorize a plaintiff to "incorporate into an existing action a different action against different parties and presenting entirely different factual and legal issues." *Lovelace v. Lee*, 2007 WL 3069660, *1 (W.D. Va. 2007), quoting, *Trail Realty Inc. v. Beckett*, 462 F.2d 396, 399–400 (10th Cir. 1972).
>
> The New Jersey District Court also discussed the pervasive impracticalities associated with multiple-plaintiff prisoner litigation, which militates against permissive joinder even if it were otherwise allowed by Rule 20(a). *Boretsky*, at *5.

> Among the difficulties noted are the "need for each plaintiff to sign every pleading, and the consequent possibilities that documents may be changed as they are circulated, or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation." *Id.* A Wisconsin federal court also found that permitting multiple prisoner-plaintiffs to proceed in a single action invites violations of Rule 11(a), which requires every pleading to be signed by all pro se plaintiffs. *Ghashiyah v. Frank*, 2008 WL 680203, *1 (E.D. Wis. 2008). Moreover, it often results in pleadings being filed on behalf of plaintiffs without their consent. *Id*.
>
> Some courts have also noted that "jail populations are notably transitory, making joint litigation difficult." *Boretsky*, at *5, citing, *White v. Tennessee Bd. of Probation and Paroles*, 2007 WL 1309402 (W.D. Tenn. 2007) ("[I]t is administratively impractical to permit five inmates at three institutions to litigate their claims in a single action"). Other District Courts have also pointed to the "need for resolution of individualized questions of fact and law surrounding the requirement for exhaustion of administrative remedies under 42 U.S.C. § 1997e(a)." *Boretsky*, at *6, citing, *Worthen v. Oklahoma Dept. of Corrections*, 2007 WL 4563665 (W.D. Okla. 2007) (Report and Recommendation), Report and Recommendation adopted in pertinent part, 2007 WL 4563644 (W.D. Okla. 2007); *Lilly v. Ozmint*, 2007 WL 2022190 (D.S.C. 2007).
>
> The *Boretsky* court found the reasoning of these other District Courts to be persuasive, noting that prisoners are "not in the same situation as non-prisoner joint plaintiffs; prisoners' circumstances make joint litigation exceptionally difficult." *Boretsky*, at *6. The court concluded, however, that it would "not be just to dismiss this case in its entirety merely because the co-plaintiffs' claims may not be joined." *Id*. Instead, pursuant to Rule 21, the court dismissed all plaintiffs except the first named plaintiff[] and directed the Clerk of the Court to open a separate case for each dismissed plaintiff, docketing the original complaint and the court's opinion and order in all the newly severed cases. Each plaintiff was also granted leave to file an amended complaint asserting his individual claims. *Id*.

*Proctor*, 661 F. Supp. 2d at 779–81.

This Court has experienced many of the described difficulties that follow from permitting multiple plaintiffs to proceed in *pro per* in a single litigation. No matter how efficient joinder may appear at the beginning of a case, prisoner-plaintiffs frequently are unable to provide pleadings signed by all parties as required by Rule 11(a) of the Federal Rules of Civil Procedure ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's individual name—or by a party personally if the party is unrepresented."); when

5

prisoners are transferred, they are never able to do so. Motions are proposed or opposed by one but not all plaintiffs, leaving the Court to puzzle out who is seeking relief against whom and on whose behalf.

It is well established that *pro se* litigants lack standing to represent the interests of others. *See Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. State of Maryland*, 366 U.S. 420, 429 (1961)); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). Moreover, Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The federal courts long have held that § 1654 preserves a party's right to proceed *pro se*, but only with respect to their own claims. Only a licensed attorney may represent other persons. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969).

Certainly when Plaintiffs find themselves housed at different facilities, and even when they are all housed at the same facility in the same unit, permitting Plaintiffs to proceed in a joint action will result in motions filed by only one Plaintiff, which would fail to meet the requirement of Rule 11(a) of the Federal Rules of Civil Procedure. *Id.* Indeed, Plaintiff Johnson's initial motion for preliminary injunctive relief included five signature lines, but only one signature: Plaintiff Johnson's. Moreover, as set forth above, the bulk of Plaintiffs' amended complaint consists of allegations solely pertaining to Plaintiff Johnson, who has been dismissed from this action. In the interests of justice, therefore, the Court will direct the Clerk to sever the claims of the remaining

five Plaintiffs (Plaintiffs Beckham, Howell, Clark, Hammond, and Cromer) into separate actions. Plaintiff Beckham may proceed under the existing case number. The Clerk shall open a new case for the claims of each of the remaining Plaintiffs (Howell, Clark, Hammond, and Cromer). The pleadings filed to date in the instant case shall appear in the docket of each case.

The Western District of Michigan has several rules designed to have related or cognate cases assigned to a single judge. *See* W.D. Mich. LCivR. 3.3.1(d), 3.3.2. Assigning related or cognate cases promotes judicial economy. The five cases that will result from the severance of Plaintiffs' claims are related cases under the Local Rules.

Finally, to ensure that each case goes forward with only the claims of a single Plaintiff, each Plaintiff shall file an amended complaint containing only the allegations relevant to that Plaintiff's claims for relief. If Plaintiffs wish to proceed with their respective actions, each must carefully fill out the form and submit it to the Court.

Accordingly,

**IT IS ORDERED** that the claims of each remaining Plaintiff (Beckham, Howell, Clark, Hammond, and Cromer) shall be severed from those of the other Plaintiffs. Plaintiff Beckham's claims shall proceed under this case number. The Clerk is directed to open a new case for the claims of each remaining Plaintiff (Howell, Clark, Hammond, and Cromer). The five cases are related within the meaning of Western District of Michigan Local Civil Rule 3.3.1(d).

**IT IS FURTHER ORDERED** that the Clerk is directed to send to each remaining Plaintiff (Beckham, Howell, Clark, Hammond, and Cromer) a copy of the form complaint under 42 U.S.C. § 1983 for a civil action by a person in state custody, together with a copy of the docket sheet for that Plaintiff's new action. Each Plaintiff shall submit an amended complaint by filing his complaint on the requisite form within twenty-eight (28) days from the date of entry of this order.

The amended complaint will take the place of the original complaint, so it must include all of the Defendants that each Plaintiff intends to sue and all of the claims that each Plaintiff intends to raise. Plaintiffs need not re-submit supporting exhibits filed with the original complaint. The case number assigned to each Plaintiff's case must appear on the front page of the amended complaint. If any Plaintiff fails to submit an amended complaint in proper form within the time allowed, the Court may dismiss the complaint without prejudice.

Dated: April 1, 2022 /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE